UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BRANDON CONWAY,<br><br>　　　　　　　　　　　Defendant. | Case No. 2:05-cr-00207-KJD-GWF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant's Motion for Compassionate Release under FIRST STEP Act (#48). Defendant filed an additional Motion for Compassionate Release under FIRST STEP Act one month later (#53). The Federal Public Defender's Office supplemented Defendant's motions (#54). The government responded in opposition (#57) and Defendant replied (#58).

I.　　Factual and Procedural Background

Defendant Brandon Conway ("Conway") seeks compassionate release from Bureau of Prisons ("BOP") custody due to his health conditions that put him at increased risk of COVID-19. Conway is currently serving a 240-month sentence. (#57, at 2). Conway was charged by a Grand Jury Indictment with coercion and enticement, travel with intent to engage in sexual act with a juvenile, and transporting child pornography. Id. at 1–2. On November 28, 2006, Conway pleaded guilty to two of the three counts: coercion and enticement, and receipt of child pornography. Id. at 2. The Court issued the sentence and Conway is currently incarcerated at FCI Coleman Medium and is scheduled for release on July 22, 2022. Id.

II.　　Legal Standard

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the Court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to release a defendant from Bureau of Prisons ("BOP") custody in a policy statement. Id.

### III. Analysis

The government concedes that Conway has established extraordinary and compelling reasons to justify compassionate release. It focuses its argument on Conway's failure to exhaust administrative remedies and asks the Court to dismiss the motion without prejudice until Conway exhausts his remedies. Conway argues that the Court can waive the exhaustion requirement due to the extraordinary circumstances. District courts in this circuit "have near unanimously concluded that failure to exhaust administrative remedies is fatal to a compassionate release petition even in light of the urgency created by COVID-19." United States v. Fuller, No. CR17-0324JLR, 2020 WL 1847751, at *2 (W.D. Wash. Apr. 13, 2020); see also United States v. Route, 458 F.Supp.3d 1285, 1288 (W.D. Wash. Apr. 29, 2020) (collecting cases). Because Defendant "has not satisfied the exhaustion requirement, the court lacks authority to grant relief under § 3582(c)(1)(A)(i)." United States v. Eberhart, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

Alternatively, even if Conway had exhausted his remedies, he has failed to meet his burden to establish that he is no longer a danger to the public. The Court does not view offenses involving child pornography lightly. Child pornography "contribute[s] to the existence of a market that harms and exploits children. The serious injury children are exposed to does not end with the making of child pornography; instead, it is perpetuated by the continued distribution and consumption of those images." United States v. R.V., 157 F.Supp.3d 207, 255 (E.D.N.Y. Jan. 21, 2016). The viewing or receipt of child pornography endangers children as it perpetuates the abuse of children. Such conduct "supports a market that preys upon and imposes serious harm onto children." United States v. D.M., 942 F.Supp.2d 327, 344 (E.D.N.Y. May 3, 2013). Child abuse committed by others had to occur for Conway to receive the pornography. Id. Such crimes bring continued emotional violence "upon the victims of child pornography by the knowledge that their abuse is being viewed and consumed by individuals like [Conway]." Id.

Courts have found different levels of culpability between defendants involved in child pornography and not all are considered dangers to the public. There is a difference between those who create child pornography and those who view or possess it but "never have—and highly likely never will—molest a child or otherwise engage in the production or commercial distribution of child pornography." Id. at 256. "Not all child pornography offenders . . . pose a danger to the community." United States v. E.L., 188 F.Supp.3d 152, 17 (E.D.N.Y. May 19, 2016). However, that is not the case here. While other defendants might have never "had a *mens rea* threatening actual contact with a child," Conway has. Id. at 173. Conway was convicted of lewd or lascivious acts with a minor girl scout. Conway used his deafness to create a relationship with a hearing-impaired girl before sexually abusing her. Later, Conway again utilized his deafness to create a bond with a hearing-impaired boy. After establishing the relationship, and discussing sexual acts with the boy, Conway traveled from California to Nevada to meet up with him. When he arrived, his messages became more aggressive and he demanded that the boy get in his car with him. Conway has done more than merely possess child pornography. His Presentence Investigation Report states that he is "considered very dangerous to the community and likely to reoffend" and that his behavior "paints the picture of a sexual predator." The Court

determined at the time of sentencing that the current sentence was necessary to protect the public and provide rehabilitation and the same need for the full sentence still exists today.

Because Conway failed to exhaust administrative remedies and cannot show that he is no longer a danger to the public, his motion is denied.

IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (#48/53) is **DENIED**.

IT IS FURTHER ORDERD that Conway's Motion to Seal (#55) is **GRANTED**.

Dated this 4th day of February, 2021.

_____
Kent J. Dawson
United States District Judge